EXHIBIT A


Copy of State Court Documents

**STATE OF SOUTH CAROLINA**                               )

**COUNTY OF** CHARLESTON                                   )

)

John Doe 201 and Jane Doe 201,                            )

**Plaintiff(s)**   )

)

**vs.**            )

)

The Citadel et al                                         )

**Defendant(s)**   )

**IN THE COURT OF COMMON PLEAS**

**CIVIL ACTION COVERSHEET**

2013-CP - 10- __10330____

(Please Print)

**Submitted By:** Gregg Meyers

**Address:** 366 Jackson Street, St Paul MN 55101

| | |
|---|---|
| **SC Bar #:** | 9908 |
| **Telephone #:** | 651-227-9990 |
| **Fax #:** | 651-297-6543 |
| **Other:** | |
| **E-mail:** | Gregg@andersonadvocates.com |

NOTE: The cover sheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing. It must be filled out completely, signed, and dated. A copy of this cover sheet must be served on the defendant(s) along with the Summons and Complaint.

## DOCKETING INFORMATION (Check all that apply)

*If Action is Judgment/Settlement do not complete

☒ **JURY TRIAL** demanded in complaint.      ☐ **NON-JURY TRIAL** demanded in complaint.

☐ This case is subject to **ARBITRATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.

☒ This case is subject to **MEDIATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.

☐ This case is exempt from ADR. (Proof of ADR/Exemption Attached)

## NATURE OF ACTION (Check One Box Below)

| Contracts | Torts - Professional Malpractice | Torts – Personal Injury | Real Property |
|---|---|---|---|
| ☐ Constructions (100) | ☐ Dental Malpractice (200) | ☐ Assault/Slander/Libel (300) | ☐ Claim & Delivery (400) |
| ☐ Debt Collection (110) | ☐ Legal Malpractice (210) | ☐ Conversion (310) | ☐ Condemnation (410) |
| ☐ Employment (120) | ☐ Medical Malpractice (220) | ☐ Motor Vehicle Accident (320) | ☐ Foreclosure (420) |
| ☐ General (130) | Previous Notice of Intent Case # | ☐ Premises Liability (330) | ☐ Mechanic's Lien (430) |
| ☐ Breach of Contract (140) | 20____-CP-____-_____ | ☐ Products Liability (340) | ☐ Partition (440) |
| ☐ Other (199) | ☐ Notice/ File Med Mal (230) | ☐ Personal Injury (350) | ☐ Possession (450) |
| | ☐ Other (299) | ☐ Wrongful Death (360) | ☐ Building Code Violation (460) |
| | | ☒ Other (399) | ☐ Other (499) |

| Inmate Petitions | Judgments/Settlements | Administrative Law/Relief | Appeals |
|---|---|---|---|
| ☐ PCR (500) | ☐ Death Settlement (700) | ☐ Reinstate Driver's License (800) | ☐ Arbitration (900) |
| ☐ Mandamus (520) | ☐ Foreign Judgment (710) | ☐ Judicial Review (810) | ☐ Magistrate-Civil (910) |
| ☐ Habeas Corpus (530) | ☐ Magistrate's Judgment (720) | ☐ Relief (820) | ☐ Magistrate-Criminal (920) |
| ☐ Other (599) | ☐ Minor Settlement (730) | ☐ Permanent Injunction (830) | ☐ Municipal (930) |
| | ☐ Transcript Judgment (740) | ☐ Forfeiture-Petition (840) | ☐ Probate Court (940) |
| | ☐ Lis Pendens (750) | ☐ Forfeiture—Consent Order (850) | ☐ SCDOT (950) |
| | ☐ Transfer of Structured Settlement Payment Rights Application (760) | ☐ Other (899) | ☐ Worker's Comp (960) |
| | | | ☐ Zoning Board (970) |
| | ☐ Other (799) | | ☐ Public Service Commission (990) |
| Special/Complex /Other | | | ☐ Employment Security Comm (991) |
| ☐ Environmental (600) | ☐ Pharmaceuticals (630) | | |
| ☐ Automobile Arb. (610) | ☐ Unfair Trade Practices (640) | | ☐ Other (999) |
| ☐ Medical (620) | ☐ Out-of-State Depositions (650) | | |
| ☐ Other (699) | ☐ Motion to Quash Subpoena in an Out-of-County Action (660) | | |
| | ☐ Sexual Predator (510) | | |

**Submitting Party Signature:** _Gregg Meyers_      **Date:** 10-16-13

**Note:** Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.

SCCA / 234 (01/2010)                                      Page 1 of 2

FOR MANDATED ADR COUNTIES ONLY
Allendale, Anderson, Beaufort, Colleton, Florence, Greenville, Hampton, Horry,
Jasper, Lexington, Pickens (Family Court Only), Richland, Union and York

SUPREME COURT RULES REQUIRE THE SUBMISSION OF ALL CIVIL CASES TO AN ALTERNATIVE
DISPUTE RESOLUTION PROCESS, UNLESS OTHERWISE EXEMPT.

**You are required to take the following action(s):**

1.  The parties shall select a neutral and file a "Proof of ADR" form on or by the 210th day of the filing of this action.  If the parties have not selected a neutral within 210 days, the Clerk of Court shall then appoint a primary and secondary mediator from the current roster on a rotating basis from among those mediators agreeing to accept cases in the county in which the action has been filed.

2.  The initial ADR conference must be held within 300 days after the filing of the action.

3.  Pre-suit medical malpractice mediations required by S.C. Code §15-79-125 shall be held not later than 120 days after all defendants are served with the "Notice of Intent to File Suit" or as the court directs. (Medical malpractice mediation is mandatory statewide.)

4.  Cases are exempt from ADR only upon the following grounds:

    a.  Special proceeding, or actions seeking extraordinary relief such as mandamus, habeas corpus, or prohibition;

    b.  Requests for temporary relief;

    c.  Appeals

    d.  Post Conviction relief matters;

    e.  Contempt of Court proceedings;

    f.  Forfeiture proceedings brought by governmental entities;

    g.  Mortgage foreclosures; and

    h.  Cases that have been previously subjected to an ADR conference, unless otherwise required by Rule 3 or by statute.

5.  In cases not subject to ADR, the Chief Judge for Administrative Purposes, upon the motion of the court or of any party, may order a case to mediation.

6.  Motion of a party to be exempt from payment of neutral fees due to indigency should be filed with the Court within ten (10) days after the ADR conference has been concluded.

**Please Note:**      **You must comply with the Supreme Court Rules regarding ADR.**
                      **Failure to do so may affect your case or may result in sanctions.**

STATE OF SOUTH CAROLINA )    IN THE COURT OF COMMON
PLEAS
                        )
COUNTY OF CHARLESTON    )    2013-CP-10- **6330**

Father John Doe 201 and Mother Jane Doe )
201,                                    )
                                        )
              Plaintiffs,               )
                                        )
v.                                      )
                                        )
The Citadel, John Rosa, individually;   )
Mark Brandenburg, individually,         )
                                        )
              Defendants,               )
_____)

## Summons

TO:   The Citadel
      John Rosa
      Mark Brandenburg

        YOU ARE HEREBY SUMMONED and required to answer the complaint in this

action. A copy of the complaint is served upon you with this summons.

        Your answer to the complaint is to be served upon the attorney for the plaintiff at

366 Jackson Street, St. Paul MN 55101.

        According to the South Carolina Rules of Civil Procedure, which govern

litigation, you are required to appear and defend yourself in this action by making and

serving an answer to this complaint within thirty (30) days after the complaint is served

upon you. The thirty days begin to run from the date after this summons and complaint

are served upon you; the date the service is made is excluded.

        If within that time you fail to appear and defend as you are required to do by the

Rules of Civil Procedure, the plaintiff in this action shall apply to the Court for the relief

demanded in this Complaint and judgment by default will be rendered against you for the relief demanded in the complaint.

Respectfully submitted,

Gregg Meyers, SC Bar No. 9908
Jeff Anderson & Associates, P.A.
366 Jackson Street
St. Paul, MN 55101
651-227-9990

Attorneys for the Plaintiff

STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS
)
COUNTY OF CHARLESTON ) 2013-CP-10- 0330
)
Father John Doe 201 and Mother Jane Doe )
201, )
)
      Plaintiffs, )
)
v. ) Gross Negligence
) Loss of services
) 42 USC § 1983 (two counts)
The Citadel, John Rosa, individually; Mark )
Brandenburg, individually, )
)
      Defendants, )
_____ )

**COMPLAINT**

For their Complaint, the Plaintiffs, parents of John Doe 201, allege:

1.  Father Doe 201 and Mother Doe 201 are citizens and residents of South Carolina. They are the natural parent of a male child born in 1997. After August, 2007, when their child was under the age of 16, he was sexually abused by Louis "Skip" Reville multiple times over a two year period. In this Complaint, Louis Reville is referred to as Reville.

2.  By Reville's own admission to criminal charges, the Plaintiffs' child is a person upon whom Reville committed criminal sexual conduct.

3.  The Plaintiffs are referred to in this public filing by pseudonym to maintain confidentiality of their child's identity pursuant to S.C. Code § 16-3-730, which prohibits publication of the names of victims of criminal sexual conduct. The Defendants will be informed of the identity of the Plaintiffs and their child by separate communication upon their agreement to maintain confidentiality of the information as to the public record.

4.  The Citadel is a public college with its principal place of business in Charleston County. It is owned and operated by the state of South Carolina.

5. John Rosa is a General in the United States military. Since January, 2006 he has served as the President of the Citadel. His office is in Charleston County, on the Citadel campus. In his capacity as President his actions and inactions are under color of state and federal law. In the third and fourth causes of action he is sued individually, in his capacity as President of the Citadel, for actions he has taken and failed to state under color of state law within the scope of his employment.

6. Mark Brandenburg is an employee of The Citadel serving as general counsel. His office is in Charleston County, on the Citadel campus. He is supervised by, among others, John Rosa. In the capacity of general counsel his actions and inactions are under color of state and federal law. In the third cause of action, he is sued individually, in his official capacity, for actions he has taken and failed to take under color of state law, within the scope of his employment.

7. This action is filed in Charleston County because the Defendants are located in Charleston County, regularly conduct business in Charleston County, and because the acts and omissions set forth in this Complaint occurred in Charleston County.

8. The Circuit Court has jurisdiction for the subject matter of this action, and personal jurisdiction over the parties to this action.

## Nature of Wrongdoing

9. Until October 28, 2011, the Defendants fraudulently concealed information that Reville was known to have a sexual interest in children, and their knowledge about Reville's sexual interest in children. Disclosures about Reville and the Citadel's prior knowledge were not known to the Plaintiffs until after October 28, 2011, when Reville was arrested and charged with various acts of sexual misconduct with minors.

10. Among other things, The Citadel maintains an Alumni Association website.

2

11. Reville is an alumnus of The Citadel who graduated in 2002. Reville was also a counselor at the Citadel's summer camp from 2002 to 2004. In 2007, before the Plaintiffs' child had ever even met Reville, The Citadel, and Defendants Rosa and Brandenburg, became aware that Reville had demonstrated a sexual interest in children and a willingness to act in inappropriate ways with children.

12. From 1957 to 2006, the Citadel operated a youth summer camp for which the Citadel selected, employed, and supervised counselors.

13. Among the counselors selected, employed, and supervised by The Citadel from 2000 to 2004 was Reville.

14. In operating the summer camp, and in selecting, employing, and supervising employees as counselors, The Citadel assumed a duty to screen, monitor, and supervise its employee counselors, assumed a duty to maintain safety of children who interacted with its employees, and assumed a duty to represent accurately its experience with its counselors.

15. During his tenure as a camp counselor, Reville sexually abused multiple campers on the grounds of the Citadel. To do so, Reville violated rules of the camp, and did so with the knowledge of Deputy Director Jenni Garrott and other camp officials.

16. Among Reville's summer camp victims was a camper, identified in this Complaint by his designation in the Reville guilty plea as John Doe 13. John Doe 13 was sexually abused by Reville in 2003. Reville not only directly abused John Doe 13, Reville used John Doe 13 to report his abuse of other campers by Reville taking those campers into his room at The Citadel to watch pornographic videos with them and coerce them to masturbate with Reville. Reville would tell John Doe 13 about his exploits with other children.

17. In 2005 John Doe 13 was himself a counselor at the Citadel Summer camp.

3

18. During the 2005 camp session, John Doe 13 went to the office of the person who was second in command of the Summer Camp, Deputy Director Jenni Garrott.

19. John Doe 13's intention in that meeting was to report Reville's sexual abuse, of himself and other minors.

20. As John Doe 13 began his report, and identified Reville as its subject, Ms. Garrott's demeanor immediately changed, and she stated that she did not have time to talk with him.  Until John Doe 13 identified Reville as his subject, Ms. Garrott had time to talk with John Doe 13. Ms. Garrott directed John Doe 13 to return to his room.  He returned to his room as she directed.

21.  Consistent with the practice and custom of The Citadel to suppress information about sexual abuse of children, Citadel Camp Deputy Director Jenni Garrott refused to take the detailed report John Doe 13 was prepared to make about Reville in the summer of 2005.

22. Within an hour of John Doe 13 attempting to report Reville to Deputy Director Jenni Garrott, a Senior Summer Camp Counselor named Patrick Reed, acting at the direction of Jenni Garrott, came to John Doe 13's room and directed John Doe 13 to come with him to the Parade Ground.  John Doe 13 complied.  At the parade ground, Mr. Reed fired John Doe 13 as a counselor.

23. Acting at Deputy Director Garrott's direction, Senior Summer Camp Counselor Patrick Reed stated, as a pretext for terminating John Doe 13, that the reason John Doe 13 was being terminated as a camp counselor was that John Doe 13 called one of the campers a "faggot."  John Doe 13 informed Mr. Reed that John Doe 13 had not called any camper a "faggot."  Jenni Garrott was aware that John Doe 13 had not referred to any camper by that term, and the pretext used by Patrick Reed was to conceal the actual reason for terminating John Doe 13: that he had attempted to report Reville to Jenni Garrott for Reville's sexual misconduct with minors.

24. Jenni Garrott knew as early as 2002 that Reville violated camp rules to isolate himself with minor campers. He did so, to her knowledge, more than once. Had she not truncated John Doe 13's report about Reville in 2005, it would have violated the practice and custom of The Citadel to suppress reports of sexual misconduct of Citadel staff with minors, and her prior knowledge and lack of proper supervision of Reville between 2002 and 2005 would have become known. For those reasons, it was preferable that John Doe 13 be terminated from the 2005 Citadel Summer Camp on a pretext.

25. The practice and custom of The Citadel is to suppress reports of sexual misconduct of Citadel staff with minors.

26. Mr. Reed gave John Doe 13 five hours to leave The Citadel campus. Management of the camp would not speak with him. Deputy Director Jenni Garrott saw campers interacting with John Doe 13 after his termination but before his departure, and yelled at John Doe 13 to get away from the Campers and for him to leave the Citadel. The actions by Garrott and Reed to terminate John Doe 13 and remove him from the Citadel campus was because John Doe 13 attempted to report Reville's misconduct. The reason used to terminate John Doe 13 was a pretext.

27. In 2005, Mark Brandenburg became general counsel for The Citadel. The custom and practice of The Citadel to suppress reports of sexual misconduct of Citadel staff with minors was continued under Mr. Brandenburg's tenure.

28. In January, 2006, Defendant Rosa became the President of The Citadel. The custom and practice of The Citadel to suppress reports of sexual misconduct of Citadel staff with minors was continued under Defendant Rosa's tenure.

29. In April, 2007 the Citadel received information from a former camper that in 2002 Reville had, on the premises of The Citadel, and during the course and scope of his employment

with the summer camp, engaged in sexually inappropriate conduct with multiple children under age 16 at its summer camp. The person making the 2007 report is referred to in this complaint as the 2002 camper.

30. Since 2002, the Citadel has known that on multiple occasions Reville would isolate himself with campers, contrary to Citadel rules.

31. Since the summer of 2005, The Citadel has had reason to know that Reville is a person dangerous to children.

32. Conduct reported to The Citadel in each of 2005 and 2007 was sufficient to have Reville terminated from The Citadel's employment, and constituted criminal acts by Reville.

33. No report to law enforcement about Reville was made by anyone at the Citadel in 2005.

34. No report to law enforcement about Reville was made by anyone at the Citadel in 2007.

35. Defendant Rosa and Defendant Brandenburg coordinated between themselves not reporting Reville to law enforcement or anyone else.

36. The Board of Visitors of The Citadel ratified that failure to report by Rosa and Brandenburg, and continues to direct the Citadel to take the position that The Citadel has no duty to report to law enforcement Citadel staff who engage children in group masturbation.

37. The Citadel Board of Visitors continues to advocate not reporting to law enforcement when its staff engages children in group masturbation.

38. Both John Doe 13 and the 2002 camper reported Reville to The Citadel in an attempt to avoid other children being sexually abused by Reville. In 2007, the 2002 camper described to Defendant Brandenburg, under oath, that stopping Reville from harming another child was "the thing I want most."

6

39. Defendants each knew, or should have known, since 2007, that Reville was dangerous to children. The 2002 camper explained to Defendant Brandenburg how and why Reville was dangerous to children.

40. In both 2005 and 2007, the Citadel concealed information about Reville's criminal conduct. That concealment continued until after October 28, 2011.

41. In 2007, Defendant Brandenburg, at the direction of Defendant Rosa, investigated the information given by the 2002 camper. Brandenburg was chosen precisely because The Citadel could claim (incorrectly) that all information he received could be withheld from others, since he was an attorney.

42. The 2002 camper identified how Reville victimized himself and others. Defendant Brandenburg determined the information was credible, and shared information with both Rosa and the South Carolina Insurance Reserve Fund, which provides insurance coverage for the Citadel. At no point prior to Reville's 2011 arrest was the Defendants' information about Reville shared with law enforcement, employers of Reville, or parents of children around whom Reville worked after 2007.

43. In the Fall of 2009, the Plaintiffs' child began taking athletic supervision from Louis Reville in Mt. Pleasant. The Defendants knew, or should have known, that Reville had undertaken employment that placed him in contact with minor children.

44. Beginning in 2007 and extending through October 28, 2011, the Defendants chose to remain silent about Reville's sexual misconduct with children. The Defendants each knew, or should have known, that failing to report Reville in 2007, or 2008, or 2009, or 2010, or 2011 implicitly represented that the Defendants had no information by which they knew that Reville

was a dangerous person to permit to work around children. That representation was false, and was known to have been false when it was made.

45. The Plaintiffs' child had contact with Reville, and was sexually exploited by Reville, between 2009 and 2011.

46. The Defendants each knew, or should have known, that Reville had undertaken employment that placed him in contact with minor children, including the Plaintiffs' child.

### For a First Cause of Action:  Gross Negligence (Failure to Warn)

47.  This cause of action is alleged against The Citadel under state law.

48. Allegations above are incorporated into this cause of action as if fully stated.

49. Agents and employees of The Citadel failed to warn about Reville's danger to children and his sexual interest in children.

50. The Plaintiffs' child was sexually assaulted by Reville on multiple occasions between 2009 and 2011 as a proximate result of the gross negligence of The Citadel's agents and employees having failed to warn about Reville.

51. Reville has admitted sexually assaulting the Plaintiffs' child multiple times, and has been criminally convicted on that admission.

52. Each of Reville's multiple opportunities to sexually assault the Plaintiffs' child was proximately caused by the various acts of gross negligence by the Defendants.  Reville sexually assaulting the Plaintiffs' child was reasonably foreseeable to the Defendants.

53. Starting in 2007, and continuing through 2011, The Citadel possessed, but did not disclose to law enforcement, or Reville's employers, or to parents of children Reville had access

8

to, or to the children Reville had access to, information by which Reville's sexually exploitive conduct towards children could be impeded.

54. The Citadel had a duty to report Reville to law enforcement. That duty was imposed on The Citadel by federal law, by professional standards, and by state law in the form of the policies of The Citadel.

55. The policies of The Citadel that required reporting applied to all Citadel employees, including Defendants Rosa and Brandenburg.

56. Had The Citadel reported its information at any time between 2007 and 2009, the information would have impeded Reville's access to sexually assault other children, and prevented Reville's sexual abuse of the Plaintiffs' child. Either Reville could have been arrested for sexual misconduct with children, employers could have been alerted to the risk of employing Reville (and either declined to hire him or provide him with heightened supervision), or parents could have made informed judgments about exposing to Reville any child of theirs knowing that Reville had a sexual interest in children.

57. Had these Plaintiffs been informed that Reville had a sexual interest in children, they would not have permitted their child to be around Reville.

58. Knowledge by The Citadel and its officials in 2005 and 2007 placed The Citadel in a special relationship with every other employer of Reville, and those parents whose children were in contact with Reville through those other employers, because of the implicit, but false, representation by The Citadel that Reville was not known to present a danger to children.

59. The information possessed by The Citadel created a duty to warn by The Citadel.

60. The Citadel has publicly acknowledged that in 2007 it had a duty to warn.

9

61. A duty to report Reville was independently required of The Citadel by federal law, the standard of care for college administrators, and Citadel policy.

62. The Citadel breached its duty, and was grossly negligent in making no disclosure of any type of the information it knew in 2007 that Reville was dangerous to children.

63. The Citadel has on one hand publicly acknowledged it should have reported in 2007 the information it had about Reville, and on the other hand claimed it had no obligation to report.

64. In fact, as The Citadel knew, Reville was dangerous to children due to the sexual interest Reville had in children. In 2007 that sexual interest was known to Reville, his victims, and to officials at The Citadel, including Defendants Rosa and Brandenburg and other Citadel agents and employees.

65. Starting not later than April, 2007, the Citadel had an obligation to use reasonable care to protect children with whom Reville interacted, and the parents of such children.

66. The Citadel undertook no steps to warn either the children with whom Reville interacted, the parents of those children, Reville's employers, or law enforcement, that Reville had a sexual interest in children.

67. Having learned that Reville had a sexual interest in children, The Citadel's concern was solely with The Citadel. The interests of children being protected from sexual assault by Reville after 2007, and of children sexually assaulted by Reville before 2007, were of no significance to The Citadel.

68. Injunctive relief is properly imposed upon The Citadel to compel The Citadel to concern itself with protecting children from sexual assault by persons known to have a sexual interest in children. The Citadel should be enjoined from failing to report to law enforcement any sexual assault or sexual misconduct which occurs on The Citadel campus.

10

2:14-cv-00775-RMG    Date Filed 03/07/14    Entry Number 1-1    Page 16 of 30

69. Unless The Citadel is ordered to do so, The Citadel and its officials will continue its practice of failing to concern itself with protecting children from sexual assault by persons known to have a sexual interest in children, and The Citadel will continue to disregard any interest in protecting children from sexual assault by persons known to have a sexual interest in children.

70. For example, while The Citadel stated publicly, through Defendant Rosa, in November, 2011, that "we didn't do what should have been done," implying that The Citadel agreed that Reville should have been reported to law enforcement in 2007, those comments by Rosa were disingenuous and were made merely for public consumption, and to further mislead the public about The Citadel. The Citadel has taken, and continues to take, the position that it has no duty to make any report to law enforcement, and had no duty to report Reville to law enforcement.

71. Without injunctive relief from the Court, The Citadel will continue to ignore its duty to report and, if and when caught, it will claim that it was merely mistaken, when in fact there is, and has long been, a custom and practice at The Citadel to withhold information about sexual misconduct by Citadel employees and staff. The custom and practice continues.

72. In maintaining silence about Reville after 2007, the Citadel breached its various duties to warn and report, and acted in a grossly negligent manner.

73. As a direct and proximate result of the failures by the Citadel from 2007 to 2011, and the Citadel's gross negligence, as exhibited on multiple occasions and in multiple ways, the Plaintiffs' child was sexually assaulted by Reville.

74. The Plaintiffs have incurred costs for treating their child, for providing their child professional care while maintaining his anonymity, and have lost the services of their child, as alleged in more detail below.

11

75. The Plaintiffs have suffered tangible and intangible injury as a result of the conduct by The Citadel.

76. The Plaintiffs are entitled to damages and injunctive relief as a result of the conduct of The Citadel.

### For a Second Cause of Action: Loss of Services

77. This cause of action is alleged against The Citadel under state law.

78. Allegations above are incorporated into this cause of action as if fully stated.

79. The Citadel had a duty to refrain from any act or omission which might cause harm to a minor child within a foreseeable danger, including the Plaintiffs' minor child.

80. Every parent has an interest in avoiding injury to his or her child, and sustains an injury himself or herself when his or her child is injured.

81. The Citadel was grossly negligent, in at least the following particulars:

    a. In failing to report Reville's conduct to law enforcement;

    b. In failing to report Reville's conduct to Reville's employers starting in 2007,

    c. In failing to report Reville's conduct to parents of children under supervision and control of Reville,

    d. In failing to correct the implicit, but false, representation by The Citadel that Reville was not known by The Citadel to be an improper person to supervise and control children; when in fact it was known to officials at The Citadel that Reville had a sexual interest in children and that the implicit representation it made by its silence was false,

    e. In failing to disrupt or impede in any way Reville's sexual interest in children;

    f. in failing to have sufficient education and training for its President, administrators, general counsel, employees, staff, and agents about reporting persons known to have engaged in sexual misconduct with children;

    g. By creating conditions where children, including Plaintiffs' child, would be isolated with a person known to be sexually interested in children, while The Citadel withheld the information that would have enabled the Plaintiffs to

12

knowingly choose whether to permit their child to participate in an activity under the supervision and control of a person with a sexual interest in their child.

h. In warning Reville of the 2007 complaints against him, to provide him information about his risk of discovery and provide him the opportunity to adjust the means by which he approached children and families to gain access for purposes of sexual manipulation of children, making him even more dangerous to families.

82. Plaintiffs have been harmed as a result of the gross negligence of The Citadel as set forth above, in that they have had impaired their interests in the services and companionship of their child by proximate result of the conduct by The Citadel.

83. As a proximate result of the conduct of The Citadel, the Plaintiffs must be mindful of the potential for long-lasting effects on their child of Reville's sexual abuse, and must be mindful of the increased risks of harm that accompanies a minor's sexual abuse and which extends well into adulthood.

84. Conduct by The Citadel has been aimed directly at the parents' interest in their child and the parent-child relationship. Among other things, since 2007 officials at The Citadel remained silent even though it had direct knowledge that Reville's conduct had caused to the parents of the 2002 camper damage to those parents and to the relationship between those parents and their child.

85. Plaintiffs are entitled to a judgment against The Citadel, for damages in an amount to be determined by the jury, and injunctive relief to be ordered by the Court.

### For a Third Cause of Action:
### Violation of 42 U.S.C. § 1983 Count One: State Created Danger

86. This cause of action is directed against Defendants Rosa and Brandenburg individually under federal, not state, law, pursuant to 42 U.S.C. § 1983, in their individual and official

13

capacities acting within the course and scope of their respective positions at The Citadel.

87. Allegations above are incorporated into this cause of action, other than allegations of negligence and gross negligence by agents and employees of The Citadel, and the allegations about a special relationship between the Defendants and the Plaintiffs or between the Defendants and the Plaintiffs' child.

88. Defendants Rosa and Brandenburg acted intentionally so as to harm the parents' interest as to their child, and created a danger for the Plaintiffs, or by their conduct were deliberately indifferent to the dangers created for the Plaintiffs interests.

89. Defendants Rosa and Brandenburg analyzed the facts reported to them in 2007 and made a conscious decision to not report Reville's conduct.

90. Each Plaintiff has an interest, cognizable under the United States Constitution, in the bodily integrity of their minor child, including an interest in familial relations and the care, custody, management and bodily integrity of their minor child.

91. Each Plaintiff has an interest, cognizable under the United States Constitution, to raise their child in an environment free from sexual abuse.

92. Conduct by the Defendants Rosa and Brandenburg posed a direct injury, and direct harm, to the Constitutional interest of each of the Plaintiff Parents. It was foreseeable to Defendants Rosa and Brandenburg in 2007 that failing to report Reville's known and demonstrated sexual interest in children would leave Reville at liberty to subject other children to sexual abuse and to deprive each of the Plaintiffs, along with other parents, of their personal Constitutional rights.

93. The Plaintiffs' parental interests have been directly affected by Rosa and Brandenburg failing to report Reville because it is parents who act in the interest of their child in arranging

14

schooling and extracurricular activity for their children. Defendants Rosa and Brandenburg having failed to report someone sexually interested in children who was known to work around children posed a direct risk of injury to that personal, parental interest as well as a risk of injury to their child. This complaint does not seek relief on behalf of the child, but on behalf of each of the parents.

94. In 2007, when investigating what had been reported about Reville's sexual interest in children, Defendants Rosa and Brandenburg carefully considered the interests of The Citadel and acted entirely in the interest of The Citadel, at the expense of the interests of the Plaintiffs, whose interests (and the interests of their child) was ignored. Defendants Rosa and Brandenburg were each deliberately indifferent to the interests of parents, children, and families who might be affected by Reville, including the Plaintiffs.

95. By their actions and inactions, Defendants Rosa and Brandenburg themselves each created for the Plaintiffs (and the Plaintiffs' child) the danger of enabling Reville's access to unwitting children and families so Reville could continue to sexually exploit children.

96. Defendants Rosa and Brandenburg each knew, and were deliberately indifferent to, Reville continuing in 2007 to sexually exploit children.

97. The conduct by the individual Defendants was egregious and arbitrary, and reflected a callous disregard so ill-conceived and malicious that it shocks the conscience. Defendants Rosa and Brandenburg concealed Reville's sexual abuse of chldren, concealed what was known about Reville's sexual interest in children, alerted Reville to the allegations of the 2002 camper and his parents, enabled Reville to revise his tactics for sexual exploitation to avoid detection by parents, and assisted Reville to create the harm suffered by Plaintiffs.

98. Defendants Rosa and Brandenburg coordinated between themselves and among others at The Citadel their decision not to report Reville to law enforcement in and after 2007. In doing so Defendants Rosa and Brandenburg acted under color of state law and within the scope of their official duty.

99. Since April, 2007, Defendants Brandenburg and Rosa have each had reason to know, and have known, that Reville is dangerous to children.

100.      Defendants Rosa and Brandenburg are each aware that parents are individually affected when their child has been sexually abused.

101.      Defendants Brandenburg and Rosa are each aware that parents whose children have been sexually abused have additional concerns to attend to as their children age, such as an increased risk of harm from substance abuse and other complications. "Trigger" mechanisms can occur throughout an abuse victim's life to disrupt the victim's stability. Those changes are now a permanent part of the responsibility for these parent Plaintiffs, and those permanent changes were proximately caused by the misconduct of Defendants Rosa and Brandenburg.

102.      In 2007, Defendants Rosa and Brandenburg were each deliberately indifferent to the known risk to the Plaintiffs as to reporting to law enforcement Reville's criminal conduct.

103.      The harm ultimately caused to the Plaintiffs, Reville sexually exploiting their child and burdening the Plaintiffs' parental obligations to their child, was foreseeable to each of Defendants Rosa and Brandenburg, and directly resulted from Reville's not having been reported and having had continued access to children after 2007.

104.      Defendants Rosa and Brandenburg each willfully disregarded the safety of all parents of children with whom Reville could isolate himself after April, 2007.

16

105.    Defendants Rosa and Brandenburg each assumed a duty to the Plaintiffs in investigating the 2007 reports about Reville.

106.    Once the Defendants Rosa and Brandenburg confirmed that the 2007 report about Reville's sexual misconduct with children was credible, the Defendants exacerbated that risk by meeting with Reville in 2007 to alert him to the reports, but took no action to report that sexual interest to law enforcement.

107.    Alerting Reville to the reports in 2007, but failing to report Reville to law enforcement in 2007, enabled Reville not only to continue sexually exploiting children, but alerted Reville to his need to more skillfully conceal his misconduct with children.  Defendants Rosa and Brandenburg each assisted Reville's sexual exploitation of children and were consciously and deliberately indifferent to the interests of the Plaintiffs and their child.

108.    After his 2007 meeting with Defendant Brandenburg, which had been coordinated with Defendant Rosa, Reville changed the tactics by which he ingratiated himself to parents and arranged by those new methods to continue his access to sexually exploit children.

109.    Defendants Rosa and Brandenburg used their authority to enable Reville's continued access to children, to create the danger that otherwise would not have existed for Reville's crimes to occur, and to make that danger more potent by alerting Reville to the complaints so he could adjust his techniques to better allay parental suspicions.

110.    Defendants affirmatively acted to create and exacerbate a dangerous situation for the Plaintiffs and their child, who were within the identifiable harm of which the Defendants were aware in 2007.

111.    This complaint concerns the injury caused to the Parents.

112.    Defendants Rosa and Brandenburg were active tortfeasors with Reville in the harm to the Plaintiffs, and willfully disregarded the safety of the Plaintiffs and their child.

113.    Without the involvement of Defendants Rosa and Brandenburg, and their informing Reville about the 2007 complaints, Reville would have been unaware of the need to refine his approach to gaining parental confidence. But for the conduct of Defendants Rosa and Brandenburg in failing to report Reville but alerting Reville to his danger of detection, Reville's opportunities to assault the Plaintiffs' child would not have existed.

114.    Defendants Rosa and Brandenburg each used their positions as state actors and were deliberately indifferent to the harm to the Plaintiffs and their child.

115.    Defendants Rosa and Brandenburg were each aware that Reville had continued access to children after 2007 and that those children and their Parents were each exposed to the increased risk of harm that the Defendants used their state positions to create by alerting Reville to the 2007 complaints against him, and making Reville even more dangerous to families than he would otherwise have been.

116.    Plaintiffs were in a worse position as a result of the 2007 intervention and non-action by the Defendants Rosa and Brandenburg, and their child was exposed to an even greater risk from an alerted and forewarned Reville, and their conduct prevented the timely investigation, apprehension, and prosecution of Reville.

117.    Actions by Defendants Rosa and Brandenburg were deliberate, and concealed Reville's sexual abuse despite professional standards for university administrators, internal policies of The Citadel, and provisions of the Clery Act, 20 U.S.C. § 1092(f). Conferring with Reville without reporting him to law enforcement made Reville an even more dangerous threat to the Plaintiffs and had the foreseeable consequence of harm to the Plaintiffs and their child.

18

118.    Plaintiffs were in the discrete class of foreseeable victims, as they are parents of an adolescent boy in the Charleston area exposed to Reville because Defendants Rosa and Brandenburg informed Reville of the 2007 complaints, allowed Reville to separate from The Citadel with no mention of the sexual abuse, and withheld Reville's conduct from law enforcement.

119.    Defendants Rosa and Brandenburg were told in 2007, by the parents of the 2002 camper, how damaging it was to both the parents, as well as to their child, to have their child subjected to Reville's sexual exploitation. The Defendants were told the parents were "absolutely furious" that their child was exposed at The Citadel to Reville's misconduct, and the parents related the multitude of problems caused for their son, hence for them, by Reville's misconduct.

120.    The Plaintiffs' child would have had no exposure to Reville had Defendants Rosa and Brandenburg not (a) alerted Reville to the 2007 complaints and (b) maintained silence about Reville's misconduct. After 2007 Reville altered his tactics and changed the setting of the opportunity he sought to sexually interact with children. The conduct by Defendants Rosa and Brandenburg shocks the conscience in the disregard each had for children and families.

121.    The Plaintiffs are entitled to actual and punitive damages in amounts to be determined by the trier of fact.

### For a Fourth Cause of Action:
### Violation of 42 U.S.C. § 1983 Count Two: Supervisor Liability

122.    This cause of action is directed against Defendant Rosa, under federal, not state law, pursuant to 42 U.S.C. § 1983, in his individual capacity acting within the course and scope of his position at the Citadel.

19

123.    Defendant Rosa was the supervisor to Brandenburg and others at The Citadel.

124.    Allegations above are incorporated into this cause of action other than allegations of negligence and gross negligence, and the allegations about a special relationship between the Defendants and the Plaintiffs or the Plaintiffs' child.

125.    As supervisor to Brandenburg and others, Defendant Rosa has supervisor liability for the conduct of The Citadel, not from *respondeat superior* but for his supervisory indifference or tacit authorization of his subordinates' failure to report Reville.

126.    Rosa's indifference proximately caused the interference between the plaintiffs and their child and the loss of the child's services from the child's sexual abuse.  The harm to and injury to the parents' interest was not incidental to the harm to their child, but was a direct harm to their parental relationship as a foreseeably affected interest, and was directly harmed as a proximate result of Rosa's inactions.

127.    Rosa had actual or constructive knowledge in April, 2007, that Reville had a sexual interest in children and was a danger to children.

128.    In April, 2007, Rosa was deliberately indifferent to Brandenburg's failure to report Reville.

129.    In June and July, 2007, Rosa approved Brandenburg's travel to Texas to take the July 1, 2007 statement of the 2002 camper, and Rosa had actual or constructive knowledge of the content of that statement as well as Brandenburg's evaluation of the 2002 camper's statement.

130.    Rosa had actual or constructive knowledge of Brandenburg's 2007 detailed analysis of how to protect The Citadel from Reville's conduct, and the lack of analysis of how to protect other children from Reville's conduct.

131.    When Brandenburg returned from Texas and reported to Rosa, Rosa was

20

deliberately indifferent to Brandenburg's failure to report Reville.

132.    Failing to report Reville permitted the harm to the Plaintiffs' constitutional interests to continue unchecked.

133.    Rosa failed to take action as a supervisor. His inaction caused a violation of the Plaintiffs' rights by his failing to require that Reville be reported.

134.    As supervisor, Rosa had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to every parent whose child was exposed to Reville. Rosa was aware, actually or constructively, that Brandenburg had confirmed Reville's misconduct with multiple children, and had confirmed its harmful impact on parents other than the Plaintiffs.

135.    Rosa was actually or constructively aware that Brandenburg had done a detailed analysis of a course of action to take to protect The Citadel from Reville's misconduct but had made no analysis or proposal for action to protect other parents from Reville.

136.    Rosa had actual or constructive knowledge that Brandenburg was familiar with Reville, and was not himself capable of making an independent judgment about Reville.

137.    Rosa had actual or constructive knowledge that Brandenburg would not permit his own children to be around Reville based on the knowledge Brandenburg had acquired in his official capacity, and Rosa had actual or constructive knowledge that Brandenburg proposed no action to protect the interests of other parents from Reville.

138.    Rosa had knowledge of conduct engaged in by Brandenburg that posed a pervasive and unreasonable risk of constitutional injury to each of the plaintiffs.

139.    It is "pervasive" and "unreasonable" to permit a known pedophile to have undisturbed and unreported access to any parent's child.

140.    It is "pervasive" and "unreasonable" to alert a known pedophile that his behaviors with children have been the subject of one or more complaints, to enable that known pedophile to adjust the techniques by which he gained the trust of parents whose children he wanted to sexually exploit so as to injure each of the Plaintiffs.

141.    On multiple occasions between 2007 and 2009, Rosa had the opportunity to himself report Reville or have his subordinates report Reville. He failed to do so. Each omission posed an unreasonable risk of harm of constitutional injury to each of the Plaintiffs.

142.    Rosa's supervisory response to Brandenburg's strategy to make no report about Reville was so inadequate as to show deliberate indifference to, or tacit authorization of, Brandenburg's repeated, and deliberate, failures to report Reville.

143.    An affirmative causal link exists between Rosa's inaction and the particular constitutional injury suffered by each of the Plaintiffs.

144.    Had Rosa required Brandenburg to report Reville, Brandenburg would have reported Reville.

145.    Had Rosa required Brandenburg to alter The Citadel's personnel records to assure that Reville would get no recommendation for any work around children, Brandenburg would have done so.

146.    Rosa as supervisor demonstrated continued inaction in the face of documented abuses by Reville which affected multiple minors and their families.

147.    An affirmative causal link exists between Rosa's inaction and the harm suffered by the Plaintiffs.  Had Rosa acted at any time in 2007 or 2008 to require that either Reville be reported to law enforcement or The Citadel assure that its internal recordkeeping would prevent Reville from getting any job working around children, the harm Reville caused to each of the

22

Plaintiffs would not have occurred.

148.    Each of Rosa's multiple inactions as supervisor was aimed not only at the interests of their child but also, and more directly, at the Plaintiff parents, who were the decision-makers and caretakers of their child, his education, and his extra-curricular activities.

149.    Rosa was deliberately indifferent to Brandenburg's failure to report and failure to adjust The Citadel's internal files on Reville, or, alternatively, Rosa authorized Brandenburg's failures, and acquiesced in the constitutionally offensive conduct of his subordinates, among them Brandenburg.

150.    Rosa is liable to each of the Plaintiffs for the proximate and natural consequences of his actions.

151.    By 2007 it was clearly established that parents had constitutionally protected interests in their children and that Rosa could be held liable under 42 U.S.C. § 1983 for constitutional violations committed by Brandenburg, and that failing to report Reville or otherwise prevent him from working around children was improper.

152.    A reasonable person in Rosa's position would have known that his actions were unlawful and inadequate to the risk of harm and threat posed by Reville to each of the Plaintiffs.

153.    Rosa's inaction to the known risks posed by Reville shocks the conscience and is completely unacceptable as a response to a known pedophile.

154.    In Rosa's public statements, he was careful to refer not to what more he should have done but what The Citadel should have done.  Rosa will continue to disclaim his responsibility for creating the harm to the Plaintiffs.

155.    Despite his public statements about his inaction, Rosa has either embraced, or acquiesced in, the argument by The Citadel that neither Rosa, nor anyone else at The Citadel,

had a duty to report Reville. Rosa's public statements to the contrary, that more should have been done as to Reville, were disingenuous and designed solely for public relations. Rosa has said one thing and done another.

156.     Rosa's disingenuous public comments, in contrast to The Citadel's formal position denying any and all liability to report Reville, also shock the conscience.

157.     Rosa identifies his function at The Citadel as primarily fundraising. Rosa's supervisory responsibilities have been exercised so as to maximize fundraising. Maintaining silence as to Reville despite the significant risk of harm he posed was one strategy adopted by Rosa so as to not interfere with his fundraising activities for The Citadel.

158.     Rosa had actual or constructive knowledge that his subordinate, Brandenburg, was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the Plaintiffs.

159.     Rosa's inaction was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices of failing to report Reville, and failing even to adjust The Citadel's internal records to inhibit Reville from working around children.

160.     Rosa had actual or constructive knowledge that Brandenburg met with Reville in 2007, enabling Reville to alter the approach he used to make himself even more dangerous to the interests of parents such as the Plaintiffs.

161.     Rosa had actual or constructive knowledge from the Arpaio experience that the best response to a sexual abuse claim was not maintaining silence but to widely broadcast to parents that abuse had been reported. Rosa as supervisor explicitly or implicitly approved a course of conduct known to be against the Constitutional interests of each of the Plaintiffs.

24

162.    The Plaintiffs are each entitled to actual and punitive damages in amounts to be determined by the trier of fact.

### Request for Jury Trial

163.    Plaintiff requests trial by jury for each cause of action above, actual damages as assessed by the jury for the first and second causes of action, actual and punitive damages for the third cause of action, and injunctive relief.

164.    Under the first and second causes of action, pursuant to S.C. Code § 15-77-300, Plaintiffs seek costs and reasonable attorneys fees to be taxed against The Citadel for acting without substantial justification.  Under the third and fourth causes of action, pursuant to 42 U.S.C. §§ 1983 and 1988, the Plaintiffs seek costs and reasonable attorneys fees against Defendants Rosa and Brandenburg, as applicable, and actual and punitive damages as provided by law.  Under each cause of action Plaintiffs seek injunctive relief to enjoin the Defendants from failing to report to law enforcement information it receives about sexual misconduct which occurs on the campus of The Citadel, and for such other and further relief as is deemed just and proper.

Respectfully submitted,

Dated:  _____

JEFF ANDERSON & ASSOCIATES, P.A.

Gregg Meyers, SC Bar No. 9908
Jeffrey R. Anderson, *pro hac vice pending*
Jeff Anderson & Associates, P.A.
366 Jackson Street, Suite 100
St. Paul, MN 55101
651-227-9990, 297-6543 facsimile
Gregg@andersonadvocates.com

Attorneys for Plaintiff

25